**Francis HARTWIG, Respondent,**

v.

**SANBORN IMPLEMENT, et al., Appellants.**

No. 46818.

Supreme Court of Minnesota.

Oct. 7, 1977.

Kelly & O'Leary, J. Brian O'Leary, Springfield, for appellants.

Berens, Rodenberg, O'Connor & Stoltzfus and William T. O'Connor, New Ulm, for respondent.

PER CURIAM.

This suit, as originally pleaded, was an action to recover damages for fraud and deceit arising from the sale of most of the assets of a farm implement business. At trial, however, defendant's [1] liability was predicated and the action was tried on the

---

1. Defendants were Sanborn Implement, Inc., and its sole proprietor, E. H. Schubbe. At trial, the court directed a verdict against defendant Sanborn Implement, Inc., for $2,340, the balance owing on a promissory note drawn in plaintiff's favor. The propriety of that order is not challenged on appeal, rather, defendant E. H. Schubbe challenges the directed verdict finding him liable for converting two combines. E. H. Schubbe is referred to as defendant hereinafter.

theory of conversion. At the close of the evidence, the trial court submitted the question of damages to the jury after directing a verdict for plaintiff on the issue of defendant's liability for conversion. The trial court found as a matter of law that defendant converted two combines belonging to plaintiff, and the jury assessed plaintiff's lost net profits at $15,000. Defendant appeals and argues that the evidence presented a jury question concerning one of the elements of the cause of action for conversion—that of plaintiff's ownership of the two combines. We affirm.

Defendant had operated Sanborn Implement, Inc., a Massey-Ferguson Implement Company franchise, since 1967 and plaintiff had been in his employ as a mechanic and salesman since that year. In 1971, the dealership had been on the brink of insolvency, but its financial condition improved somewhat by 1975. On March 7, 1975, plaintiff entered into a contract to purchase most of the assets of the dealership, including the franchise which was to be delivered as soon as possible after October 31, 1975. Plaintiff did not assume the liabilities of the business. In effect, he took over the business for a total price of $132,413.76 to be paid in monthly installments. Plaintiff had paid one installment when performance of the contract became obstructed.

█ Plaintiff's claim of ownership of the two combines found by the trial court to have been converted rests on two different bases, but both are grounded in the sales contract entered into between plaintiff and defendant. In December 1974, while plaintiff was still in defendant's employ, he sold a new "750" combine to Fred Hutchinson and received in partial payment a used "300" combine as a trade-in. The sales agreement between plaintiff and defendant specifically provided that all interest in the transaction described as the "Hutchinson deal" transferred to plaintiff. On March 26, 1975, after plaintiff began operating the business as a sole proprietorship, he sold another new "750" combine to Gary Balbach and received in partial payment a used "510" combine as a trade-in.

As was usually the case when a trade-in was received in partial payment, the purchase money received did not satisfy the dealership's obligation to Massey-Ferguson. Plaintiff gave defendant notes for the deficits in the amounts of $2,351.08 and $4,007.69 respectively, payable when plaintiff sold the used combines, although Massey-Ferguson required payment when the new machinery was delivered to the farmer. Besides cash, Massey-Ferguson would accept a lien on the trade-in in the amount of the deficit to be satisfied when the dealer sold the used machine. Most of the machines that plaintiff purchased from defendant were mortgaged or "floor planned" under this arrangement.

Apparently because of a need to reduce his indebtedness, defendant, without plaintiff's consent, mortgaged the used "300" combine to Massey-Ferguson as security for a $3,400 debt having nothing to do with the "Hutchinson deal." Upon learning of defendant's action, plaintiff wanted "out" of the sales agreement and reported to Massey-Ferguson a number of irregularities that had occurred under defendant's management. On the next day, representatives of Massey-Ferguson demanded that defendant make immediate payment of approximately $10,000 or lose the franchise. Since defendant was unable to meet the demand, the franchise was revoked, resulting in termination of the business. As part of the liquidation, defendant sold the used "300" and "510" combines for a total of $29,000 and delivered the proceeds to Massey-Ferguson to reduce his indebtedness. Plaintiff seeks to recover the net profit he would have realized on the original transactions had he sold the used combines.

If all interest in the "Hutchinson deal" was transferred to plaintiff, as the terms of the sales agreement indicate it should have been, it follows that the title to the "300" combine was transferred to plaintiff, and he was entitled to the possession of that trade-in.

The sale of the new "750" combine to Balbach, who traded in the used "510" combine, occurred after plaintiff and defendant

had executed their sales agreement and at a time when plaintiff was operating the business. When plaintiff gave defendant his note for $4,007.69 for the deficit on the "750" combine sold to Balbach, it is obvious that as between plaintiff and defendant, plaintiff was entitled to keep any profit made from the sale of the trade-in. This is conceded by defendant in his statement of facts: "Under the terms and conditions of the agreement of the parties the plaintiff would be entitled to keep any profit made from the sale of the trade-in (Balbach combine)." Considering the fact that plaintiff was then operating the business, the used combine taken in trade by him had to be his, and defendant had no right to sell it. In fact, such a sale by defendant would preclude plaintiff from keeping the profit. We hold that the trial court was correct in finding that defendant converted the two used combines.

Defendant argues that the trial court did not find that plaintiff was the owner of the two used combines. The trial court, however, did make the following statement concerning ownership:

"Well, strictly speaking, I don't think you could say either one of them owned them in a strict sense because there was something owing to Massey-Ferguson on them, but as between the plaintiff and the defendant there's no doubt in the Court's mind that the plaintiff had the right to sell those * * *."

The only realistic conclusion that can be drawn from this statement is that plaintiff had some right of ownership, that those rights were paramount and superior to those of defendant, and that plaintiff had a right to sell the combines in question.

If plaintiff had the right to sell the property, he had the right to possession. Unless he could deliver possession, his right to sell would be meaningless. In order to maintain an action for conversion, plaintiff need only have a limited title or special interest entitling him to possession. 18 Am. Jur.2d, Conversion, § 53.

Defendant asserts that plaintiff breached the contract between the parties and made its performance impossible. Defendant bases this claim on the fact that plaintiff reported certain business irregularities on the part of defendant to Massey-Ferguson, resulting in the termination of the franchise. The reporting of these irregularities, such as "floor planning" the Hutchinson combine, was probably justified and may have been the appropriate thing to do. In any event, if there was a breach by plaintiff, it occurred after plaintiff's right to the used combines had vested. The trial court so indicated in these words:

"Those combines had already been sold before Massey-Harris [sic] came down there and cancelled the contract."

Affirmed.

WAHL, J., not having been a member of this court at the time of the submission, took no part in the consideration or decision of this case.